**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**LLOYD WASHINGTON, JR.,**<br>**a/k/a "Bub"**<br><br>**Defendant.** | **CRIMINAL ACTION**<br><br>**NO. 07-258-1** |
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**GREGORY JONES,**<br>**a/k/a "G"**<br><br>**Defendant.** | **CRIMINAL ACTION**<br><br>**NO. 07-258-5** |

**MEMORANDUM OPINION**

**RUFE, J.** **July 17, 2015**

Pending before the Court are timely motions filed by Defendants Lloyd Washington and Gregory Jones seeking relief pursuant to 28 U.S.C. § 2255, arguing that they were denied the effective assistance of counsel in violation of the Sixth Amendment to the Constitution. For the reasons that follow, the motions will be denied.

## I. INTRODUCTION

In this case, five people were indicted on charges relating to a conspiracy to retrieve parcels containing cocaine from United Parcel Service ("UPS") Stores in Philadelphia, Pennsylvania, from May 2006 to February 2007. At the conclusion of a jury trial, Washington and Jones were both convicted of one count of conspiracy to distribute five kilograms or more of

cocaine and one count of attempted possession with intent to distribute five kilograms or more of cocaine, and aiding and abetting the same. The jury found a third defendant, Ronald Crawford, not guilty of the same charges, as well as a firearms charge. Two other defendants, including Mark Rimes, pleaded guilty before the trial and testified as government witnesses. After the Court denied post-trial motions for acquittal or a new trial, Washington was sentenced to 192 months of imprisonment and Jones was sentenced to 216 months of imprisonment. The Court of Appeals affirmed the judgments of conviction and sentence.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a prisoner serving a sentence in federal custody may petition the court which imposed the sentence to vacate, set aside, or correct the sentence by asserting that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[1] Relief under AEDPA is extraordinary and "generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."[2] Claims of ineffective assistance of trial and appellate counsel are properly raised in a § 2255 motion.[3]

---

[1] 28 U.S.C. § 2255(a).

[2] *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).

[3] *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").

The Sixth Amendment guarantees to each criminal defendant the effective assistance of counsel. Whether counsel was ineffective is evaluated under the guidelines of *Strickland v. Washington*. To prevail on an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.[4]

Counsel's performance is only deficient when it is "outside the wide range of professionally competent assistance."[5] For example, "[a]n attorney cannot be ineffective for failing to raise a claim that lacks merit," because in such cases, the attorney's performance is not deficient, and would not have affected the outcome of the proceeding.[6] Similarly, an ineffective assistance of counsel claim is not established upon the showing that an error had an effect on the proceedings; rather, a defendant must show that there is a reasonable probability that the outcome would have been different in the absence of such errors.[7] Prejudice occurs upon a showing that there is a reasonable possibility that but for counsel's deficient performance the outcome of the underlying proceeding would have been different.[8]

---

[4] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[5] *Id.* at 690.

[6] *Singletary v. Blaine*, 89 F. App'x 790, 794 (3d Cir. 2004) (citing *Moore v. Deputy Comm'r of SCI-Huntingdon*, 946 F.2d 236, 245 (3d Cir. 1991)).

[7] *Strickland*, 466 U.S. at 694.

[8] *Lewis v. Horn*, 581 F.3d 92, 106-07 (3d Cir. 2009).

## III. SUMMARY OF EVIDENCE AT TRIAL

To provide context, the Court will recap briefly the facts as presented at trial.[9] On February 7, 2007, Philadelphia Police Detective Timothy King received a call from a UPS security specialist who had examined and opened two packages shipped to 211 South Street (a UPS Store) in Philadelphia and thought they contained cocaine. The detective went to investigate the area near the store and saw a silver Buick with its engine running; Washington and co-defendant Mark Rimes were inside the Buick. After a UPS driver arrived at and entered the UPS Store, the detective saw Washington walk up and down South Street, look into the front cab of the UPS truck, look into the UPS Store window, and circle the 200 block of South Street in the Buick approximately five times. Detective King then went to the UPS sorting facility and inspected the packages, which contained a white powder that field-tested positive for the presence of cocaine. The Philadelphia Police laboratory later confirmed that the white powder was in fact cocaine, weighing approximately 23.7 kilograms. After the field test, Detective King removed five bricks of cocaine from the parcels and resealed the parcels.

Detective King, State Trooper Joseph Nigro, and Special Agent Joseph Hartman then took up surveillance positions along South Street near the UPS Store, and the UPS inspector made a controlled delivery of the packages. Within five minutes of the delivery, Washington and Rimes returned in the silver Buick, and after Washington circled the block several times and walked up and down the street repeatedly, he eventually drove away. Some time later, the surveillance team observed a taxi driven by Crawford, with another defendant as passenger, park

[9] The facts are set forth in more detail in the Court's Memorandum Opinion denying Defendants' post-trial motions, with citations to trial transcripts that have been omitted herein. *United States v. Washington*, No. 07-258, 2012 WL 275113 (E.D. Pa. Jan. 30, 2012) *aff'd*, 543 F. App'x 171 (3d Cir. 2013).

directly in front of the UPS Store; the passenger retrieved the suspect parcels and the taxi drove a block away and pulled up directly behind Washington's Buick. The taxi then followed Washington's car to Delaware Avenue and onto northbound Interstate 95. The law enforcement officers effected a stop of both vehicles and arrested Washington, Crawford, Rimes, and Crawford's passenger. Approximately 18 months later, on August 27, 2008, federal agents located and arrested Jones in Mullica Hill, New Jersey. At the time of the arrest, law enforcement agents recovered approximately $85,400 in cash and $45,000 in jewelry, along with greeting cards addressed to Jones and business cards for three car rental locations and a commercial shipping depot.

A cooperating witness, who was not criminally charged, testified that Washington had arranged for her and one of the cooperating defendants to open mailboxes in the names of fictional businesses at the South Street UPS Store and another UPS Store located at 1735 Market Street in Philadelphia on May 15, 2006. Rimes testified that Washington coordinated several pick-ups of parcels of cocaine at the two UPS locations in the months leading up to his February 7, 2007 arrest, and described how Washington would then weigh the cocaine and package it in smaller bags, and also testified that Jones would visit the apartment and pick up money from Washington. Rimes testified to the trips to the UPS store on February 7, 2007, and meetings and telephone calls among Washington, Jones, and others.

At trial, the government introduced testimony from cooperating witnesses not charged in this case regarding Jones's involvement in a prior conspiracy to ship cocaine to Philadelphia through Federal Express by using stolen corporate accounts and false names. This evidence was admitted for the limited purpose of establishing that Jones had knowledge and intent to commit

the charged offenses, and as evidence of a common scheme. The witnesses testified that from the summer of 2005 until March 2006, they had arranged for cocaine to be shipped in Federal Express boxes and had used an apartment on Henry Avenue in Philadelphia to store and break down the drugs into smaller packages. One of these witnesses also testified that he often had sold Federal Express parcels of cocaine to Jones during this same time frame and that Jones frequently stopped by the Henry Avenue apartment to pick up the packages of cocaine. The jury also heard testimony from one of these witnesses that after Jones was arrested in this case, the two men saw each other in prison and Jones asked whether the other cooperating witness was "snitching."

## IV. DISCUSSION

Washington argues that his trial counsel was ineffective because counsel failed to seek dismissal on the grounds that the Speedy Trial Act was violated under a "ruse exception" to 18 U.S.C. § 3161 and the Sixth Amendment, failed to pursue voir dire of the jury panel, failed to move for a mistrial after a witness identified Washington in court, failed to cross-examine a key witness for the government, failed to move to exclude the testimony of a key witness for the government, failed to move for a severance after the government sought to introduce evidence against a co-defendant pursuant to Federal Rule of Evidence 404(b), and failed to object to an erroneous jury instruction. Jones argues that although his trial attorney was generally effective, counsel was ineffective in failing to object to the same jury instruction identified by Washington. Jones also argues that his counsel on direct appeal, who was not the same attorney as at trial, failed to raise adequately on appeal the admission of 404(b) evidence relating to the earlier conspiracy and to evidence seized during Jones's arrest.

*A. Speedy Trial*

The Speedy Trial Act requires that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."[10] "If the government fails to comply with this time limit, the Speedy Trial Act requires the dismissal of charges in the complaint, with or without prejudice."[11] Ordinarily, the Speedy Trial Act only applies once a defendant is in federal, as opposed to state, custody. However, some federal appellate courts have recognized what is known as a "ruse exception" whereby the Speedy Trial Act "may be triggered by state detentions that are merely a ruse to detain the defendant solely for the purpose of bypassing the requirements of the Act."[12] The Third Circuit has not yet recognized the ruse exception,[13] but the courts that have recognized it require "a showing that the Government knew or should have known that the defendant was restrained solely to answer federal charges."[14]

Washington has not alleged any facts that would support a finding that the government "arrange[d] with state authorities to have the state authorities detain a defendant until federal

---

[10] 18 U.S.C. § 3161(b).

[11] *United States v. Dyer*, 325 F.3d 464, 467 (3d Cir. 2003) (citing 18 U.S.C. § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) as extended by section 3161(h) of this chapter, such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.")).

[12] *United States v. Benitez*, 34 F.3d 1489, 1494 (9th Cir. 1994) (citations omitted).

[13] *Dyer*, 325 F.3d at 467.

[14] *United States v. Woolfolk*, 399 F.3d 590, 596 (4th Cir. 2005).

authorities [were] ready to file criminal charges."[15] The fact that federal agents may have participated in the investigation and arrest along with the Philadelphia police does not meet this standard, as the Speedy Trial Act is not triggered when a defendant is arrested by federal authorities and then charged with state law violations.[16] The criminal docket from the state court shows that the case initially was actively pursued in state court: Washington and two of his co-defendants were arraigned on February 9, 2007 and bail was set on that date. Preliminary motions were filed and hearings were held in April of 2007.[17] The state-law charges were withdrawn on May 14, 2007, after the federal indictment issued, but there is no indication that the Pennsylvania authorities were not prepared to prosecute Defendant's case.

Moreover, even if counsel had moved for dismissal for violation of the Speedy Trial Act, and even if the Court had found a violation, there are no allegations that would have supported dismissal with prejudice instead of dismissal without prejudice, which would have permitted the government to re-indict Defendant.[18] Thus, as Defendant would have obtained no benefit from a motion to dismiss on Speedy Trial Act grounds, he suffered no prejudice from counsel's decision

---

[15] *Benitez*, 34 F.3d at 1494.

[16] *See, e.g., United States v. Beede*, 974 F.2d 948, 950 (8th Cir. 1992); *United States v. Bagster*, 915 F.2d 607, 609-10 (10th Cir. 1990); *United States v. Amuny*, 767 F.2d 1113, 1120 (5th Cir. 1985).

[17] *Commonwealth v. Washington*, Docket No. MC-51-CR-0006445-2007 (Municipal Court of Philadelphia County, Pa.).

[18] In deciding whether to dismiss with or without prejudice, the court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The factors in this case would have favored dismissal without prejudice, given the seriousness of the offenses, the relatively short period of time between arrest and federal indictment (three months), and the fact that both the state and federal authorities had jurisdiction over the case.

not to pursue such a course.[19]

*B. The Testimony of the Cooperating Witness*

At trial, a cooperating witness, who was not criminally charged, testified that Defendant Niema Simpson and she opened mailboxes at the South Street UPS store and another UPS store located at 1735 Market Street in Philadelphia on May 15, 2006.[20] The cooperating witness testified that she and Simpson were driven to the UPS Stores by Simpson's brother.[21] However, the witness was unable to identify Washington as the driver in the courtroom or from a photograph presented to her in court.[22] The witness testified that she had been able to identify the driver in a photograph shown to her at the grand jury proceeding years before, but because of the passage of time she could not identify him at the trial.[23] When the photograph was shown to the witness, it was also briefly shown on the monitors visible to the jury, and counsel promptly objected.[24] Washington argues that counsel was ineffective for failing to move for a mistrial, failing to request that the jury be questioned about the effect of the photograph on jurors' ability

---

[19] Defendant's argument of undue delay in violation of the Sixth Amendment fares no better. As the Court of Appeals has held: "Only if the period of delay is 'presumptively prejudicial' do we apply the *Barker v. Wingo* balancing test to determine if a violation of a defendant's Sixth Amendment speedy trial rights occurred. *See United States v. Dent*, 149 F.3d 180, 184 (3d Cir.1998) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). Under that four-factor test we consider: (1) the length of the delay; (2) the reason for it; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant." *United States v. Corbin*, Nos. 11-2767, 11-4032, 13-1084, 2015 WL 1786989 at * 1 (3d Cir. Apr. 21, 2015). Defendant has alleged no facts that would support a finding that any alleged delay was "presumptively prejudicial."

[20] N.T. 7/24/09 at 234-49.

[21] Co-Defendant Simpson, who pleaded guilty, testified that she introduced Washington as her brother to the cooperating witness. N.T. 7/23/09 at 6 [excerpt at Doc. No. 313].

[22] N.T. 7/24/09 at 229-230, 232-33.

[23] N.T. 7/24/09 at 233.

[24] N.T. 7/24/09 at 230.

to remain impartial, and failing to cross-examine the witness.

None of these arguments provides grounds for finding ineffective assistance of counsel. It appears that the photograph was visible to the jury for a "split second,"[25] but in any event, the witness was unable to identify Washington either in the courtroom or from the photograph. There was no basis for a mistrial or for questioning the jury. If anything, it would have been helpful to Washington for the jury to see that the witness could not identify him when presented with a photograph of him, and defense counsel, Mr. Spade, made this point effectively in his closing argument.[19] To cross-examine the witness on the question of identification would only have given the witness an opportunity to make the identification the government had been unable to obtain on direct examination. Other defense counsel thoroughly cross-examined the witness on the other aspects of her testimony, such that additional questions from Mr. Spade would have been cumulative.[20]

*C. The Testimony of Co-Defendant Mark Rimes*

Washington argues that his counsel should have moved to exclude all testimony from co-defendant Mark Rimes, who pleaded guilty before trial. According to Washington, Rimes was incompetent and at his plea colloquy he called the indictment a "bunch of lies," which contradicted his testimony at trial. Washington presents no legal basis, however, for the exclusion of Rimes's testimony. Rimes was not at any time adjudged incompetent, and his contradictory statements regarding the truth of the government's accusations against him and

---

[25] N.T. 7/29/09 at 243.

[19] N.T. 7/29/09 at 243-44.

[20] N.T. 7/24/09 at 267-74.

Washington went not to Rimes's competency as a witness but to his credibility. Washington's counsel vigorously cross-examined Rimes on statements made at the time Rimes pleaded guilty.[21] Counsel also throughly cross-examined Rimes on his trial testimony.[22] "Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."[23] Washington has not shown that his counsel's approach in this case was unreasonable.

*D. Severance*

Washington also argues that his counsel was ineffective for failing to move to sever Washington's trial from Jones's after the Court granted the government's 404(b) motion to allow evidence of a prior conspiracy that implicated Jones but not Washington. However, as the Court held in denying the post-trial motions, severance was not warranted. The Third Circuit held, in a similar case, that the contention that the evidence related to "an entirely separate conspiracy which affected [other defendants] by implication" did not require severance.[24] "The introduction of evidence more damaging to one defendant than another does not entitle the seemingly less culpable defendant to a severance. Further, the mere introduction of other crimes evidence against one defendant does not entitle a co-defendant to a separate trial. The inquiry is whether the jury can reasonably be expected to compartmentalize the evidence against each defendant."[25]

---

[21] N.T. 7/27/09 at 52-55; 57-59.

[22] N.T. 7/27/09 at 62-67.

[23] *Harrington v. Richter*, 562 U.S. 86, 106 (2011) (internal quotation marks omitted).

[24] *United States v. McGlory*, 968 F.2d 309, 340 (3d Cir. 1992).

[25] *Id.* (citations omitted).

In this case the jury received appropriate limiting instructions and the jury was able to compartmentalize the evidence, as shown by the acquittal of a co-defendant. Thus, even if counsel erred in failing to move for a severance, Washington cannot show that counsel's alleged failure resulted in unfair prejudice.

*E. Jury Charge*

Washington and Jones both argue that their attorneys were ineffective for failing to object to an erroneous jury charge. The original transcript of the jury charge reported that the Court defined one of the elements of a conspiracy as requiring that the government prove that "the defendant joined the agreement or conspiracy knowing of its objective to possess with the intent to distribute cocaine and intending to join together with at least one other alleged **conspiracy** to achieve that **objection**."[26] Defendants maintain that because the Court admitted evidence of an uncharged, earlier conspiracy involving Jones, the jury could have convicted them based on that conspiracy, instead of the one charged in the indictment. The Court need not rule on the merits of this argument, however, because the highlighted language from the transcript is an unfortunate scrivener's error. The electronic sound recording of the Court's delivery of the jury charge has been placed on the docket, and from the recording, there can be no dispute that the Court instructed the jury that "the defendant joined the agreement or conspiracy knowing of its objective to possess with the intent to distribute cocaine and intending to join together with at least one other alleged **conspirator** to achieve that **objective**."[27] Counsel did not err, because the

[26] N.T. 7/30/09 at 73 [Doc. No. 358] (emphasis added).

[27] Audio File 7/30/09 at approx. 2:12:32-2:13:40 [Doc. No. 496]. The Court also distributed copies of the written charge to counsel and the jury that contained the language as read in court.

jury instruction was correct as given to the jury.

*F. Jones's Appellate Counsel*

Jones argues that his attorney on appeal failed to raise sufficient arguments concerning the admission of the evidence of the earlier conspiracy and the evidence collected at the time of Jones's arrest. However, counsel unquestionably raised both of these issues on appeal, and the Third Circuit ruled directly on these issues.[26] As the Court of Appeals held, the standard of review for both of these issues was whether this Court abused its discretion in admitting the evidence.[27] Jones has not explained what arguments counsel could have made that would have overcome this hurdle, when trial counsel (whom Jones acknowledges to have been effective) was unable to persuade this Court to exclude the evidence. Finally, Jones also briefly mentions that counsel failed to appeal certain sentencing issues, but offers no further explanation of the sentencing argument, and the Court will not further address these conclusory allegations.[28]

## V. CONCLUSION

Having considered Defendants' arguments, the Court concludes that there is no basis for relief and the motions will be denied without a hearing. Because Defendants have not made a substantial showing of the denial of a constitutional right, no certificate of appealability will be issued.[29]

An appropriate Order will be entered.

---

[26] *Washington*, 543 F. App'x at 178-79.

[27] *Id.*

[28] *United States v. Thomas,* 221 F.3d 430, 437 (3d Cir. 2000).

[29] *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).